IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| LANDON KNIGHT and TRAVIS RODENBERGER,<br><br>Plaintiffs,<br><br>vs.<br><br>SIBANYE STILLWATER LIMITED, and STILLWATER MINING COMPANY,<br><br>Defendants. | CV 23-37-BLG-KLD<br><br>ORDER |

  This removed tort action comes before the Court on simultaneous briefing addressing the threshold issue of whether the state law claims asserted by Plaintiffs Landon Knight and Travis Rodenberger (collectively "Plaintiffs") are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185. Because the Court concludes for the reasons stated below that Plaintiffs' claims are completely preempted, the Court has subject matter jurisdiction over this removed action pursuant to 28 U.S.C. §§ 1331 and 1441.

**I. Background**

  Defendant Sibanye Stillwater Limited is the parent company of Defendant Stillwater Mining Company (collectively "Sibanye-Stillwater"). (Doc. 15 at ¶¶ 3-4). Sibanye-Stillwater operates the Stillwater Mine ("Mine"), which is a platinum

1

and palladium underground mine located in Nye, Stillwater County, Montana. (Doc. 15 at ¶ 4). The Mine employs approximately 1,200 miners and operates two, 12-hour production shifts, seven days per week. The mine operator uses Load Haul Dump loaders, underground trucks, and underground rail haulage to transport ore to the surface. (Doc. 15 at ¶ 5).

At all times relevant to this action, Plaintiffs were employed by Sibanye-Stillwater as underground locomotive operators. (Doc. 15 at ¶¶ 1-2). Plaintiffs were members of the United Steel Workers International Union, Local 11-001 ("Union"). (Doc. 3 at ¶ 4). As union members, Plaintiffs' employment was governed by the Collective Bargaining Agreement between Sibanye-Stillwater and the Union for the Nye-Columbia Unit ("CBA"). (Doc. 3 at ¶ 5).

On the afternoon of June 9, 2021, Plaintiffs had been assigned to operate a locomotive on the 3500 level ("35 level") of the Mine. (Doc. 15 at ¶ 7). Plaintiffs were responsible for dispatch activities at the 35 level of the Mine, and had their own radio channel for communication regarding access to the rail haulage way on the 35 level. (Doc.15 at ¶ 11). Rodenberger was operating the radio and Knight was operating the locomotive when two Sibanye-Stillwater mine supervisors — Dale Ketola and Jerry Ashlock — entered a section of the rail haulage on the 35 level in a Kubota Personnel Carrier ("Kubota"). (Doc. 15 at ¶¶ 7, 8). The locomotive struck the Kubota head-on, killing both Ketola and Ashlock. (Doc. 15

at ¶ 9). At the time of the accident, Sibanye-Stillwater had Standard Operating Procedures for Rail Operations on Rail 35 ("Rail 35 SOP") that required clear and confirmed communication between the miners wanting to enter the rail haulage way and the locomotive operators. (Doc. 15 at ¶ 11). After conducting an investigation into the cause of the accident, Sibanye-Stillwater terminated Plaintiffs' employment on March 1, 2022. (Doc. 15 at ¶¶ 1-2; Doc. 21-1 at ¶ 6).

On December 27, 2022, Plaintiffs filed this action in Montana state court asserting four causes of action against Sibanye-Stillwater. (Doc. 1-1). Counts 1 and 2 of the First Amended Complaint assert claims for negligent infliction of emotional distress on behalf of Knight and Rodenberger, respectively. (Doc. 12 at ¶¶ 23-32). These claims allege that Sibanye-Stillwater's "failure to assure that traffic rules governing communication, right of way, and direction of movement were followed in rail haulage ways constituted negligent acts and/or omissions" that caused Plaintiffs to suffer severe emotional distress. (Doc. 12 at ¶¶ 24, 29). Counts 3 and 4 are brought on behalf of Knight and Rodenberger, respectively, and assert that Sibanye-Stillwater wrongfully terminated their employment without good cause. (Doc. 12 at ¶¶ 33-44).

On April 6, 2023, Sibanye-Stillwater removed the case to this Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1441 and 1331. (Doc. 1). Sibanye-Stillwater asserts that this Court has original federal question subject

matter jurisdiction because Plaintiffs' claims are preempted by § 301 of the LMRA. (Doc. 1 at ¶¶ 7, 12). Following the preliminary pretrial conference, the Court ordered simultaneous briefing on the threshold issue of preemption. (Doc. 19). That briefing is now complete, and the Court heard oral argument on January 18, 2024.

## II.   Legal Standards

### A.   Removal and Subject Matter Jurisdiction

"A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005) (citation omitted). "However, it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris, USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotations omitted). Once a case has been removed from state court, the federal district court has "a duty to establish subject matter jurisdiction over the removed action *sua sponte*," regardless of whether the parties have raised the issue or not. *United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).

Federal courts have subject matter jurisdiction over cases "arising under" federal law. 28 U.S.C. § 1331. Under the "well-pleaded complaint rule," a case

arises under federal law when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). But when a federal statute completely preempts a state law cause of action, "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and is removable under 28 U.S.C. § 1441. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

### B.   LMRA Preemption

Section 301 of the LMRA, codified at 29 U.S.C. § 185(a), states in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"By its terms, this provision confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, and Agricultural Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656 (1998).

"Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Industries, Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019)

(citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962)). In addition, while "the language of § 301 is limited to '[s]uits for violation of contracts,' the Supreme Court has expanded § 301 preemption to include cases the resolution of which 'is substantially dependent upon analysis of the terms of a [collective bargaining agreement].'" *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) (quoting *Allis-Chalmers*, 471 U.S. at 220). "Although normally federal preemption is a defense that does not authorize removal to federal court, § 301 has such 'extraordinary preemptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Curtis*, 913 F.3d at 1152 (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

The Ninth Circuit has established a two-step test to determine whether a state law is completely preempted by § 301. *Kobold v. Good Samaritan Regional Medical Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). First, the court must "determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [collective bargaining agreement]. If the right exists solely as a result of the [collective bargaining agreement], then the claim is preempted and the analysis ends there." *Kobold*, 832 F.3d at 1032 (quoting *Burnside v. Kiewit P. Corp.*, 491 F.3d 1053, 1058 (9th Cir. 2007)). But if the court

determines that the right underlying the state law claim exists independently of the collective bargaining agreement, the court moves to the second step, which asks "whether the right 'is nevertheless substantially dependent on analysis of a collective-bargaining agreement'." *Kobold*, 832 F.3d at 1032 (quoting *Burnside*, 491 F.3d at 1059). Whether a claim is substantially dependent on analysis of a collective bargaining agreement depends on "whether the claim can be resolved by 'looking to' versus interpreting the [collective bargaining agreement]. If the latter, the claim is preempted; if the former, it is not." *Kobold*, 832 F.3d at 1033 (quoting *Burnside*, 491 F.3d at 1060).

**II.     Discussion**

Sibanye-Stillwater argues that all of the state law claims alleged in the First Amended Complaint are completely preempted by § 301 of the LMRA. To begin, Sibanye-Stillwater contends that Plaintiffs' wrongful discharge claims (Counts 3 and 4) are preempted because the Montana Wrongful Discharge from Employment Act expressly "does not apply to a discharge … of an employee covered by a written collective bargaining agreement," Mont. Code Ann. § 39-2-912(1)(b), which means that any right Plaintiffs have to be free from wrongful termination stems solely from the CBA. Plaintiffs do not argue otherwise, and have conceded in their preliminary pretrial statement that their wrongful discharge claims are preempted. (Doc. 17 at 5-6). Plaintiffs confirmed this position at oral argument,

7

and conceded that Counts 3 and 4 of the First Amended Complaint are completely preempted by § 301 and should be dismissed.

Next, Sibanye-Stillwater argues that Plaintiffs' claims for negligent infliction of emotional distress (Counts 1 and 2) are also preempted by § 301 because they are substantially dependent on an analysis of the CBA.[1] As expressly pled in Counts 1 and 2, Plaintiffs' theory is that Sibanye-Stillwater negligently failed "to assure that traffic rules governing communication, right of way, and direction of movement were followed in rail haulage ways," and this allegedly negligent conduct foreseeably caused Plaintiffs serious or severe emotional distress. (Doc. 12 at ¶¶ 23-32).

In the general allegation section of their pleading, Plaintiffs allege more specifically that Sibanye-Stillwater: (1) failed to assure miners followed the Rail 35 SOP; (2) did not assure miners followed any traffic rules for communication of right of way and direction of movement in any of the mine's rail haulage ways; (3) failed to revise communication procedures for level 35; (4) assigned Plaintiffs to

---

[1] Both parties effectively ask the Court to take judicial notice of the CBA, which Sibanye-Stillwater has provided as an exhibit to the declaration of Human Resources Manager Lowell Burris. (Doc. 3-1). Because the preemption issues raised by the parties cannot be resolved without considering the CBA, the Court takes judicial notice of the CBA. *See e.g. Sarmiento v. Sealy, Inc.*, 367 F.Supp.3d 1131, 1142 (N.D. Cal. 2019) (recognizing that "courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption.") (citation omitted).

perform dispatch duties in very loud environments; (5) assigned Plaintiffs to perform dispatch duties in areas of poor radio reception; and (6) undertrained Plaintiffs with respect to dispatch duties. (Doc. 12 at ¶¶ 16-18). In the briefing, Plaintiffs confirm they are not claiming emotional distress as a result of their allegedly wrongful termination, but rather as a result of being involved in the accident and witnessing the deaths of their coworkers, which Plaintiffs attribute to the alleged negligent conduct described above. (Doc. 20 at 7).

Sibanye-Stillwater acknowledges that Plaintiffs' claims for negligent infliction of emotional distress satisfy the first step of the preemption test because they involve a right conferred by Montana law. (Doc. 21 at 20). *See Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411, 425 (Mont. 1995) (recognizing an independent cause of action for negligent infliction of emotional distress "where serious or severe emotional distress was the reasonably foreseeable consequence of the defendant's negligent act or omission").

Focusing instead on the second step of the preemption test, Sibanye-Stillwater contends that Plaintiffs' claims are preempted because they are substantially dependent on analysis of the CBA. Plaintiffs take the contrary position that their emotional distress claims are not preempted because they can be resolved without examination or interpretation of the CBA.

The Ninth Circuit has long held that an emotional distress claim is not

preempted by LMRA "when it can be resolved without examination or interpretation of the CBA." *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (9th Cir. 1990) (citing *Tellez v. Pacific Gas and Electric Co., Inc.*, 817 F.2d 536, 539 (9th Cir. 1987)). If the collective bargaining agreement "does not govern the offending behavior, § 301 does not preempt" a claim for emotional distress. *Cook*, 911 F.2d at 239. In *Tellez*, for example, the plaintiff alleged emotional distress based on his employer's distribution of a suspension letter to other employees. The applicable collective bargaining agreement did not require or regulate suspension letters, and was silent on work conditions. *Tellez*, 817 F.2d at 539. Because "examination or interpretation of the agreement would not help to resolve" the plaintiff's emotional distress claim, the Ninth Circuit held the claim was not preempted by § 301. *Tellez*, 817 F.3d at 539. *See also Miller v. AT&T Network Systems*, 850 F.2d 543, 550 n. 5 (9th Cir. 1988) (stating that "if the particular CBA does not govern the offending behavior, as in *Tellez*, then an emotional distress claim is not preempted").

But if a collective bargaining agreement does cover the conduct at issue, a claim for emotional distress will generally be preempted. *Humble v. Boeing Co.*, 305 F.3d 1004, 1013 (9th Cir. 2002). For instance, in *Truex v. Garret Freightlines, Inc.*, 784 F.2d 1347, 1350 (9th Cir. 1985), the plaintiffs asserted emotional distress claims based on allegations that their supervisors sent them unjustified warning

letters and harassed them by using abusive language, conducting excessive surveillance, and altering their work assignments. The Ninth Circuit found that the plaintiffs' emotional distress claims were "in essence claims that administration of discipline was improper under standards set by the collective bargaining agreements." *Truex*, 784 F.2d at 1350. Because an evaluation of the plaintiffs' claims was "substantially dependent upon an analysis of the terms of the collective bargaining agreements," which governed disciplinary matters, the Ninth Circuit held that the claims were preempted by the LMRA. *Truex*, 784 F.2d at 1350.

Similarly, in *Jackson v. Southern California Cas. Co.*, 881 F.2d 638, 645 (9th Cir. 1989), the plaintiff asserted emotional distress claims based on allegations that his employer accused him of unsatisfactory work, being a troublemaker, harassing other employees, and other dishonest acts. Because the plaintiff's claims related to matters of discipline governed by the collective bargaining agreement, the Ninth Circuit held they were preempted by § 301. *Jackson*, 881 F.2d at 645. *See also Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 402-03 (9th Cir. 1989) (holding that emotional distress claims based on allegations that the defendant wrongfully terminated the plaintiff's employment for violating an attendance policy authorized by the collective bargaining agreement were preempted by § 301 because evaluation of the claims required interpretation of the collective bargaining agreement); *Gonzalez v. Costco Wholesale Corporation*, 2018 WL

546679, at *4 (C.D. Cal. Jan. 22, 2018) (holding that the LMRA preempted emotional distress claims based on allegations that the defendant reprimanded and suspended the plaintiff for taking time off to accommodate her disability, and illegally cancelled her medical insurance, because the collective bargaining agreement covered the conduct at issue, including employee discipline and medical coverage).

As the caselaw summarized above reflects, whether an emotional distress claim is preempted by § 301 thus depends on whether the collective bargaining agreement governs the defendant's alleged wrongful behavior. *Martinez v. Lucky Stores, Inc.*, 1998 WL 646662, at *2 (N.D. Cal. Sept. 17, 1998).

Here, the conduct Plaintiffs complain of in their emotional distress claims is governed by the CBA. As delineated above, Counts 1 and 2 expressly allege that Plaintiffs suffered severe emotional distress because Sibanye-Stillwater negligently failed "to assure that traffic rules governing communication, right of way, and direction of movement were followed in rail haulage ways." (Doc. 12 at ¶¶ 24, 29). Plaintiffs also allege that Sibanye-Stillwater failed to assure that its employees followed the Rail 35 SOP; failed to revise communication procedures for level 35; assigned Plaintiffs to perform dispatch duties in loud environments and in areas with poor radio reception; and failed to adequately train Plaintiffs with respect to their dispatch duties. (Doc. 12 at ¶¶ 16-18).

Several portions of the CBA are relevant to these allegations, including Article 8 governing "Health and Safety." (Doc. 3-1 at 8-10). Section 1 of Article 8, in particular, provides that Sibanye-Stillwater has an "obligation to prevent, correct and eliminate all unhealthy and unsafe working conditions and practices." (Doc. 3-1 at 8). Employees, in turn, "are also expected to recognize, address and report unhealthy or unsafe working conditions" and "shall follow all Company safety and health rules and procedures and comply with applicable State and Federal regulations." (Doc. 3-1 at 8). Section 10 further provides that "[n]o employee will perform unsafe work or be required to perform unsafe work," and "[e]mployees performing unsafe work or unsafe practices will be subject to disciplinary action, up to and including discharge." (Doc. 10 at 10).

Portions of CBA Article 27 governing "Management Rights" are also relevant to Plaintiffs' emotional distress claims. (Doc. 3-1 at 26). Section 1 of Article 27 states that Sibanye-Stillwater "retains all the general and traditional rights to manage the business as well as any rights under the law or agreed to by the parties." (Doc. 3-1 at 26). Sections 2 through 4 of Article 27 provide a non-exhaustive list of Sibanye-Stillwater's management rights, including: the right to determine the content of jobs; assign and direct the workforce; create and administer rules, policies and procedures; decide where or when training on a particular operation or job is required; and decide how much training is required.

(Doc. 3-1 at 26).

Evaluation of Plaintiffs' claims for negligent infliction of emotional distress claims will require interpretation of at least some of these CBA provisions governing Sibanye-Stillwater's obligations and authority with respect to rulemaking, workplace safety, training, and assignment of jobs. For example, to the extent Plaintiffs allege they suffered emotional distress stemming from Sibanye-Stillwater's failure to assure that traffic rules were followed in the Mine's rail ways, it would be necessary to interpret CBA provisions obligating Sibanye-Stillwater to prevent, correct and eliminate all unhealthy and unsafe working conditions and practices in order to define the scope of those obligations. Likewise, to the extent Plaintiffs assert that Sibanye-Stillwater had updated rail haulage communications procedures on some levels of the Mine but negligently failed to do so for level 35, the Court would need to interpret CBA provisions granting Sibanye-Stillwater the right to create policies and procedures, and obligating it to prevent and correct unsafe working conditions, in order to determine whether Sibanye-Stillwater had a duty to make its rail haulage communication procedures uniform on all levels of the Mine. Additionally, to the extent Plaintiffs claim Sibanye-Stillwater acted negligently in assigning job duties and failing to provide adequate training, the Court would need to interpret CBA provisions governing training and the assignment of jobs in order to determine the scope of Sibanye-

Stillwater's duties.

The Court therefore concludes that Plaintiffs' emotional distress claims are substantially dependent on interpretation of the CBA. Because evaluation of Plaintiffs' claims for negligent infliction of emotional distress will require interpretation of various CBA provisions, the claims are preempted under § 301 of the LMRA.

Plaintiffs advance two related counterarguments, but neither is persuasive. First, Plaintiffs argue their emotional distress claims can be resolved without interpreting the CBA because the CBA "says nothing about worker remedies for the Mine's torts of negligent infliction of emotional distress." (Doc. 20 at 15). Plaintiffs note that the CBA does not address the psychological well-being of Sibanye-Stillwater's employees, and "imposes no obligation to protect workers from practices that inflict emotional trauma absent physical injury or occupational disease." (Doc. 20 at 16). Because the CBA does not address emotional distress, and does not impose an obligation on Sibanye-Stillwater to protect workers from mental injury, Plaintiffs take the position that their emotional distress claims arise solely under Montana common law and can be resolved without interpreting the CBA. (Doc. 20 at 17).

This argument misses the mark, however, because it focuses on the type of injury Plaintiffs claim to have suffered, rather than the alleged wrongful conduct

they assert caused them serious or severe emotional distress. As the Ninth Circuit caselaw summarized above makes clear, the § 301 preemption analysis for emotional distress claims focuses on whether the collective bargaining agreement governs the defendant's alleged wrongful conduct; if it does, the claims are preempted. For the reasons already discussed, the CBA governs the conduct that Plaintiffs allege caused them severe emotional distress.

Plaintiffs further argue that because the CBA does not expressly address mental injuries, mental injuries are not grievable under the CBA. But again, the proper focus is whether the CBA governs Sibanye-Stillwater's alleged wrongful conduct, not the nature of Plaintiffs' claimed injuries. Even if the nature of Plaintiffs' alleged injuries was relevant, it would be necessary to interpret the CBA in order to determine whether it covers both mental and physical injuries, and whether mental injuries are grievable. Because resolution of Plaintiffs' emotional distress claims would thus require interpretation of the CBA, those claims would be preempted by § 301 of the LMRA. *See e.g. Kobold*, 832 F.3d at 1032 (The preemptive effect of § 301 applies to all "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA.").

Plaintiffs cite the Montana Supreme Court's decision in *Stratemeyer v. Lincoln County*, 915 P.2d 175 (Mont. 1996) to bolster their argument that because the CBA does not obligate Sibanye-Stillwater to protect employees from mental

16

injury, their emotional distress claims are based on a duty arising exclusively under Montana common law and so are not preempted by the LMRA. *Stratemeyer* concluded that mental injuries are excluded from coverage under the Montana Workers Compensation Act, and consequently held that a plaintiff with a work-related mental injury may bring a tort action against his or her employer to recover damages. *Stratemeyer*, 915 P.2d at 180-182. *Stratemeyer* is inapposite to the issues presented here. The fact that mental injuries are not subject to workers' compensation exclusivity is not relevant to the § 301 preemption analysis for emotional distress claims, which centers on whether the collective bargaining agreement governs the defendant's alleged wrongful conduct.

Second, Plaintiffs maintain that their emotional distress claims can be evaluated without interpreting the CBA because the duty to avoid negligently inflicting emotional distress is a common law duty that is owed to all citizens, and Sibanye-Stillwater's alleged conduct would violate Montana law regardless of the CBA. (Doc. 20 at 17). Plaintiffs rely on *Galvez v. Kuhn*, 933 F.2d 773 (9th Cir. 1991), which held that § 301 of the LMRA did not preempt an employee's claims for assault and battery and intentional infliction of emotional distress because the conduct alleged "would violate state law irrespective of the identity of the wrongdoer or of his victim," and the claims alleged "violation of a duty owed to all citizens." *Galvez*, 933 F.2d at 777. Analogizing to *Galvez*, Plaintiffs argue § 301

17

does not preempt their emotional distress claims because the duty to avoid negligently inflicting emotional distress arises under Montana common law, is owed to all citizens, and is not governed by the CBA.

Plaintiffs' reliance on *Galvez* is misplaced. Although Montana recognizes negligent infliction of emotional distress as an independent cause of action, "proof of negligence is a prerequisite to a claim of negligent infliction of emotional distress." *Wescott v. Northwest Drug Task Force,* 2006 WL 2714952, at *7 (D. Mont. Sept. 20, 2006) (citing *Sacco v. High Country Independent Press, Inc.*, 896 P.2d 411, 425 (Mont. 1995). In *Sacco,* the Montana Supreme Court recognized negligent infliction of emotional distress as an independent, not derivative, cause of action, and in doing so adopted the following standard: "A cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission." *Sacco*, 896 P.2d at 425.

As previously discussed, Plaintiffs' emotional distress claims are based on allegations that Sibanye-Stillwater engaged in negligent acts or omissions related to rulemaking, workplace safety, training, and assignment of job duties. Sibanye-Stillwater's alleged duties are specific to its underground mining operation and the employment relationship. These obligations exist, if at all, solely because of the CBA, are not owed to the public at large, and are governed by the CBA.

The circumstances here are, as Sibanye-Stillwaters contends, more analogous to the United States Supreme Court case of *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362 (1990) than to *Galvez*. In *Rawson*, survivors of four miners killed in an underground fire brought a negligence action against the miners' union. *Rawson*, 495 U.S. at 364. The plaintiffs alleged that members of a safety committee designated by the union had been inadequately trained on mine safety issues, and that union members on the committee negligently performed inspections of the mine. *Rawson*, 495 U.S. at 365. Although the duty to conduct inspections was imposed by state law, the Supreme Court found that the plaintiffs' tort claims could not be described as independent of the collective bargaining agreement. *Rawson*, 495 U.S. at 370. The record reflected "that the [u]nion's representatives were participating in the inspection process pursuant to the provisions of the collective-bargaining agreement, and that the agreement determined the nature and scope of the [u]nion's duty." *Rawson*, 495 U.S. at 371. Thus, *Rawson* was "not a situation where the [u]nion's delegates [were] accused of acting in a way that might violate the duty of reasonable care owed to every person in society." *Rawson*, 495 U.S. at 371. The Supreme Court held the plaintiffs' negligence claims were preempted by § 301, and in doing so made clear that the plaintiffs could not avoid preemption "by characterizing the [u]nion's negligent performance of what it does on behalf of the

members of the bargaining unit pursuant to the terms of the collective bargaining agreement as a state-law tort." *Rawson*, 495 U.S. at 372.

Here, as in *Rawson*, Plaintiffs' emotional distress claims cannot be described as independent of the CBA. Plaintiffs' claims allege violations of mine-specific duties that would not exist absent the CBA, and this is not a situation where Sibanye-Stillwater is accused of acting in a way that might violate a general duty of reasonable care owed to the public at large. Like the negligence claims at issue in *Rawson*, Plaintiffs' emotional distress claims are substantially dependent on interpretation of the CBA.

Because the CBA governs Sibanye-Stillwater's alleged wrongful conduct and Plaintiffs' claims for negligent infliction of emotional distress cannot be resolved without interpreting the CBA, the Court concludes Counts 1 and 2 of the First Amended Complaint are preempted by § 301 of the LMRA.

## IV.   Conclusion

For the reasons addressed above, the Court concludes that all four causes of action alleged in the First Amended Complaint are completely preempted under § 301 of the LMRA and are hereby dismissed.

DATED this 23rd day of January, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge